# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WALTER J. URBANSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 09-CV-280 |
| ) | |
| CITY OF CHICAGO, OFFICER DENNIS ) | Judge Robert M. Dow, Jr., |
| O'KEEFE, OFFICER MIKE MAYHEW, and ) | |
| OFFICER TIM SILDER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Walter Urbanski has sued the City of Chicago and Chicago Police Officers Dennis O'Keefe, Mike Mayhew, and Tim Silder for violations of state and federal law stemming from his arrest on November 11, 2008. Counts I, III, and V are brought pursuant to 42 U.S.C. § 1983, alleging unlawful seizure/false arrest (Count I), false imprisonment (Count III), and malicious prosecution (Count V). Plaintiff's remaining claims allege state law violations for false arrest (Count II), false imprisonment (Count IV), malicious prosecution (Count VI), and indemnity (Count VII). Defendants have moved for summary judgment on all counts. For the reasons set forth below, the Court grants Plaintiff's motion for leave to file surreply [46] and also grants Defendants' motion for summary judgment [32] on Counts I, III, and V. The Court dismisses without prejudice Plaintiff's state law claims for false arrest (Count II), false imprisonment (Count IV), malicious prosecution (Count VI), and indemnity (Count VII).

## I. Factual Background[1]

On November 11, 2008, Chicago Police Officers Dennis O'Keefe, Mike Mayhew, and Tim Silder (collectively "Defendant Officers" or "Defendants") were assigned to an 8th District tactical team that was given a burglary mission to focus on patrols of garages and residences in the area. Defendants were patrolling the 8th District in an unmarked vehicle driven by Mayhew; all were wearing plain clothes, police stars, bulletproof vests, gun belts, and radios. Shortly before midnight on November 11, Mayhew saw someone in an alley and proceeded to turn the car around, turn off its headlights, and drive down the alley towards the individual. Upon arriving, Defendant Officers saw that the individual was urinating in the alley. In response to Defendants' inquiries, Walter Urbanski, the plaintiff in this matter, said he was coming home from a bar and admitted urinating in the alley. Defendants contend, and Plaintiff does not dispute, that Plaintiff appeared to be intoxicated and that he was flailing his arms while answering questions, his speech was slurred, and he smelled like alcohol. Mayhew asked Plaintiff for some basic information—his name, address, phone number, and other personal details—and Plaintiff cooperated. Defendant Silder then emptied all the contents from Plaintiff's pockets and set them out on the hood of the police car. At this point, the parties' stories diverge—Plaintiff maintains that the property, including Plaintiff's wallet, remained in Defendants' possession. Defendants contend that the property was returned to Plaintiff. In any event, both parties agree that Plaintiff was then handcuffed and placed under arrest. At some point during the arrest (either in the alley or on the way back to the police station), Plaintiff was

---

[1] Where the parties disagree over relevant facts, the Court sets forth the competing versions. In addition, the Court resolves genuine factual ambiguities in Plaintiff's favor. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

advised that he was under arrest for urinating in a public way, to which Plaintiff responded, "Do you have anything better to do?"

At the station, Plaintiff was asked to remove his shoelaces, empty his pockets, and take his belt off before being brought to a secure processing area. During his deposition, Plaintiff admitted that he was searched while in custody at the 8th District station, and that they inventoried his personal effects at that time. Plaintiff's possessions were laid out on a table and Plaintiff was taken by Silder to the lockup area to be photographed and fingerprinted by the lockup personnel. Defendant Officers took Plaintiff's personal items to the station's tactical office, where Officer Silder began removing and separating the items from the plastic bag for inventory purposes. While plaintiff was waiting to be processed, O'Keefe entered the room and told Plaintiff that he was being charged with felony possession of heroin. According to Defendants, they had found an orange, folded piece of paper in Plaintiff's wallet, and the paper contained a white powder substance that the offers suspected was heroin. During his deposition, Plaintiff first claimed that he did not have possession of "any type of powder * * * in an orange piece of paper." Later, when pressed on his possession of an orange piece of paper, he clarified that he did not remember exactly what was in his wallet and did not specifically remember having any orange paper. The orange piece of paper was a menu from a pizza restaurant at 5136 S. Archer Avenue, just a few blocks from where Plaintiff was living at the time.

O'Keefe signed two complaints against Plaintiff, a felony complaint charging Plaintiff with heroin possession, and an ordinance violation complaint for "Human Defecating on Public Property," which alleged that Plaintiff "while on the public way, did defecate upon the alley, in

3

view of citizens who are in this immediate area."[2] Plaintiff was held overnight and on the morning of November 12, 2008, was transported to the Cook County Department of Corrections where he appeared before a judge via video for a bond hearing. Two court dates were set for Plaintiff's two charges: December 3, 2008 for the urinating charge and December 4, 2008 for the possession of a controlled substance charge. Plaintiff's bond was set at $5,000. Because Plaintiff could not pay the $500 required for his release, Plaintiff remained at the Cook County Jail.

The orange paper with the white powder was sent to the Illinois State Police Crime Lab for testing and was received on November 13. Jason George, a forensic scientist for the Illinois State Police Forensic Science Center at Chicago with ten years of experience testing for illegal drugs, tested the white powder found on the orange, folded pizza menu that Defendants claim they found in Plaintiff's wallet. When conducting his analysis, George noted that the white powder "looks like flour, fluffy." He then testified that "based directly on my personal experience with flour, it looked like flour to me." Based on the tests conducted on the powder, George concluded that there was no scheduled substance in the white powder. During his deposition, George estimated that about five percent of the substances he receives contain no scheduled substances. He further testified that most white powders that do contain a scheduled substance end up containing heroin, and that such powders come in a range of colors and textures. He also testified that it was not common to see a white powder in a folded piece of paper—he stated that he did not "have a specific memory of [testing a white powder found in a folded piece of paper and having it test positive for a scheduled substance]," although he testified

---

[2] Defendants conceded that it was an error attributable to Defendant Officers to indicate "defecating" instead of "defecating/urinating" on the misdemeanor/ordinance violation complaint form. However, the charges are the same and cover both acts.

to a "belief" that he had received powder in a folder piece of paper that tested positive for heroin. He testified that typically heroin is carried in a small Ziploc plastic bag or a folded foil packet.

Because George's report showed that no scheduled substances were found in the inspected powder, Plaintiff's case was advanced to November 24, 2008, at which time the drug charges were dismissed. Plaintiff was released from custody that day, after spending 13 days in the County Jail.

## II. Standard of Review

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks and citation omitted).

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. Analysis

### A. Plaintiffs' Fourth and Fourteenth Amendment Claims

Plaintiff brings § 1983 claims against Defendant Officers for false arrest, false imprisonment, and malicious prosecution in violation of the Fourth and Fourteenth Amendments. To prove a claim under § 1983 against the officers, Plaintiff must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. See, *e.g. Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 929 (1982). Defendant Officers do not dispute that they were acting under color of state law at the time of Plaintiff's arrest. Rather, they argue that they had probable cause for Plaintiff's arrest.

"Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)). "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id*. (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v.*

*Myler*, 149 F.3d 641, 646 (7th Cir. 1998). The Court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000); *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Id.*

        1.     *Plaintiff's false arrest and false imprisonment claims*[3]

Where the underlying facts supporting probable cause are not in dispute, a court may decide whether probable cause exists. See *Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009) (citing *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993)). Once probable cause relating to an offense is established, all § 1983 liability against the arresting officer(s) is barred, "even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Village of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004); *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 762 (7th Cir. 2006).

Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law. *Pourghoraishi*, 449 F.3d at 761 (citing *Williams v. Jaglowski*, 269

---

[3] Because "[p]robable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution" (*Mustafa*, 442 F.3d at 547), the Court considers Plaintiff's false arrest and false imprisonment claims together. The Court considers Plaintiff's federal malicious prosecution claim separately.

7

F.3d 778, 782 (7th Cir. 2001)). Thus, as long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the offender without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In this case, the facts and circumstances known to Defendant Officers at the time of Plaintiff's arrest plainly support a reasonable belief that Plaintiff both had committed and was committing a crime. It is not disputed that on the evening of November 11, 2008, Plaintiff was urinating in an alley near 4838 South Harding Avenue in the City of Chicago. It is further undisputed that Defendant Officers saw Plaintiff urinating in the alley as they approached in their patrol car. After admitting to Defendant Officers that he was, in fact, urinating in the alley, Plaintiff was arrested, handcuffed, placed in a patrol car, and transported to the 8th District Chicago Police Station. Later, at the police station and subsequent to a custodial search, Plaintiff also was charged with possession of less than 15 grams of heroin.

Under the Municipal Code of Chicago, police officers are empowered to arrest any individual observed urinating or defecating "on the public way, or on any outdoor public property, or on any outdoor private property." Chicago Mun. Code § 8-4-081 (2007); Chicago Mun. Code § 2-84-230 (2007) ("The members of the police department shall have power to * * * arrest or cause to be arrested, with or without process, all persons who break the peace, *or are found violating any municipal ordinance* or any criminal law of the state") (emphasis added). It is inconsequential whether Plaintiff was physically standing on what might have been private property, as the Chicago Municipal Code prohibits urination on both private and public outdoor property. Chicago Mun. Code § 8-4-081 (2007). Because it is undisputed that (1) Plaintiff was violating a Chicago municipal ordinance, (2) Defendant Officers witnessed Plaintiff violating a Chicago municipal ordinance, and (3) Plaintiff admitted to Defendant Officers that he was

engaging in conduct that violated a Chicago municipal ordinance, there is no question that Defendant Officers had probable cause to arrest Plaintiff for violating Chicago Municipal Ordinance § 8-4-081.

Plaintiff grounds his federal wrongful arrest claim not on his arrest for violating § 8-4-081, but rather on his arrest for the heroin charge. Plaintiff asserts that but for the heroin charge, "he would have been released within 45 minutes * * *." To support his contention, Plaintiff points to a general or "special" order of the Chicago Police Department, which indicates that watch commanders should authorize the release of ordinance violators "as soon as reasonably possible." The Court recognizes the distinction that Plaintiff attempts to draw under the particular circumstances in this case: given authorization to release arrestees "as soon as reasonably possible" on an ordinance charge (absent extenuating circumstances) means that, had that authority been exercised, Plaintiff would have been released much earlier but for the possession charge. However, Plaintiff's argument falls short because it rests on speculation and is contrary to controlling Seventh Circuit precedent.

First, as to the speculation, the record establishes that it is within the *discretion* of the desk sergeant to release on I-Bond an offender charged with an ordinance violation. See Pl. SOF ¶ 23 (citing Silder Dep. 43:20-44:5). A desk sergeant's discretion has no bearing on whether the arresting officers had probable cause to hold Plaintiff. Furthermore, to the extent that Plaintiff argues that the general order "required" Plaintiff's release following the completion of the paperwork, the Seventh Circuit has consistently held that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices." *Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003); see *Pasiewicz v. Lake County Forest Preserve Dist.,* 270 F.3d 520, 526 (7th Cir. 2001); *Soller v.*

*Moore,* 84 F.3d 964, 969 (7th Cir. 1996). "In other words, the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson v. City of Chicago*, 472 F.3d 444, 454-55 (7th Cir. 2006). Plaintiff cannot survive summary judgment merely by arguing, based on general police orders, that had he been charged with the municipal code violation alone he *may* have endured a shorter detention, particularly where the code provision authorizing the arrest permits overnight custody.[4]

But even more importantly, it is not disputed that Plaintiff already was under arrest when he was charged with possession of heroin—Plaintiff was not free to leave after he was handcuffed during his initial encounter with the officers. See *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1017 (7th Cir. 2006) ("An arrest occurs when 'a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest'") (citation omitted). In other words, Plaintiff was not released from the Officer's custody and then subsequently re-arrested on drug charges. See *Holmes*, 511 F.3d at 682 (once an individual is arrested, he is not additionally or "more seized" when additional charges are present). For purposes of Plaintiff's false arrest and false detention claims, Defendant Officers did not need additional probable cause to keep Plaintiff in police custody after he was charged with possession of heroin. See *id.*. Defendants had probable cause to arrest Plaintiff for violating the municipal ordinance, and whether or not the additional controlled substance charge was flawed (or, under *Mustafa*, even

---

[4] As previously noted, the Chicago Municipal Code specifies that Chicago police officers have the power to arrest for any violation of the Code. Chicago Mun. Code § 2-84-230; see also *Williams v. Jaglowski*, 269 F.3d 778, 783-84 (7th Cir. 2001) (noting Chicago police officers' authority to arrest for any violation of the Code). Furthermore, the code authorizes an arresting officer "to commit the arrested persons for examination" and "if necessary, to detain arrested persons in custody overnight or Sunday in any safe place, or until they can be brought before the proper court."

malicious) does not affect the initial probable cause determination, at least as it pertains to the false arrest and false imprisonment claims. See *Holmes*, 511 F.3d at 682 ("An arrested individual is no more seized when he is arrested on three grounds rather than one; and so long as there is a reasonable basis for the arrest, the seizure is justified on that basis even if any other ground cited for the arrest was flawed."); see also *Devenpeck v. Alford*, 543 U.S. 146, 152-54 (2004) (rejecting rule that offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest).[5]

Plaintiff relies on *Holmes* to argue that trial is required on his §1983 claim, but *Holmes* did not recognize a federal, constitutional claim based on allegations of wrongful detention. Rather, *Holmes* simply held that probable cause supporting a criminal charge for one crime does not foreclose a state-law malicious prosecution claim as to one or more additional charges for which the defendant is later prosecuted. See *Holmes,* 511 F.3d at 682 ("In this respect, a malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking."). Although Plaintiff characterizes his claim as one for "false imprisonment" without probable cause, he has not demonstrated that his "false imprisonment" allegations constitute the deprivation of a specific, constitutional right, as required to support a claim under § 1983. To the contrary, *Holmes* and *Mustafa* teach that both §

---

[5] In support of his position, Plaintiff relies on a decision in which the court opined at the motion to dismiss stage that the right to detain the plaintiff based on petty offenses had expired after he was booked at the police station. See *Cox v. Renth*, 2010 WL 785977, at *3 (S.D. Ill. Mar. 4, 2010). Given the fact that the court in *Cox* was considering a motion to dismiss and did not address either *Holmes* or *Mustafa* in reaching its conclusion, the Court is not persuaded to follow *Cox*.

1983 false arrest and false imprisonment claims are negated by a showing of probable cause to arrest and allegations like Plaintiff's here must be advanced through a state-law claim for malicious prosecution. See also *Banister v. City of Chicago*, 2009 WL 2948396, at *4 (N.D. Ill. Sept. 10, 2009). Because Defendant Officers unquestionably had probable cause to arrest Plaintiff based on his violation of § 8-4-081 of the Chicago Municipal Code, the Court grants summary judgment for Defendants on Plaintiff's federal claims for false arrest and false imprisonment (Counts I and III).[6]

### 2. *Plaintiff's federal malicious prosecution claim*

As set forth above, *Holmes* held that probable cause supporting a criminal charge for one crime does not foreclose a *state-law* malicious prosecution claim as to one or more additional charges for which the defendant is later prosecuted. See *Holmes,* 511 F.3d at 682 ("In this respect, a malicious prosecution claim is treated differently from one for false arrest: whereas probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause, probable cause as to one charge will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking."). The question remains whether Plaintiff's Fourteenth Amendment due process claim survives. "It is true that at some point after a person is arrested, the question whether his continued confinement or prosecution is unconstitutional passes over from the Fourth Amendment to the [Fourteenth Amendment's] due process clause." *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) (internal citations

---

[6] One last point: Plaintiff alleges that he was intentionally framed by Defendants because they needed to boost their productivity numbers or in retaliation for Plaintiff's criticism of the officers ("Do you have anything better to do?") or a combination of both. But even accepting that allegation, summary judgment is appropriate because probable cause is an absolute defense even if the defendant officers acted with malicious motive. *Simmons*, 26 F.3d at 654.

12

omitted). Plaintiff claims that Defendant Officers deliberately fabricated a false charge of heroin possession either to boost their productivity numbers, or in retaliation for Plaintiff's criticism of the officers ("Do you have anything better to do?"), or both, and thus violated Plaintiff's due process rights.

The first problem with Plaintiff's position is that once his § 1983 claim shifted from a Fourth Amendment violation to a Fourteenth Amendment violation, his claim essentially became one for malicious prosecution, rather than for a due process violation. See *McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) (finding that "to the extent [plaintiff] maintains that [defendant] denied him due process by causing him to suffer a deprivation of liberty from prosecution and a contrived conviction * * * deliberately obtained from the use of false evidence, his claim is, in essence, one for malicious prosecution, rather than a due process violation.") (internal citations omitted). As the Seventh Circuit emphasized in *Newsome v. McCabe,* "the existence of a tort claim under state law knocks out any constitutional theory of malicious prosecution." 256 F.3d 747, 750 (7th Cir. 2001). Illinois has a common law tort action for malicious prosecution.[7] *Miller v. Rosenberg,* 749 N.E.2d 946, 951-52 (Ill. 2001). Thus, any claim that Plaintiff has for malicious prosecution arises under Illinois law. *Newsome,* 256 F.3d at 750. "In sum, [Plaintiff] cannot do an end run around the foregoing precedent by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment." *McCann*, 337 F.3d at 786.

Presumably in an attempt to get around this problem, Plaintiff directs the Court's attention to *Jones v. City of Chicago*, which, according to Plaintiff, stands for the proposition that

---

[7] Indeed, Plaintiff has covered his bases and brought a malicious prosecution claim pursuant to Illinois state law.

13

when a police officer plants "white powder and prepar[es] false reports which would have ultimately been used by the prosecutors, it is the functional equivalent of withholding exculpatory evidence" and the officer violates the accused's right to due process.[8] Pl. Resp. at 11; see *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir. 1988) ("If police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded."). While *Jones* recognizes that "[a] police officer who withholds exculpatory information from the prosecutor can be liable under [§ 1983]," subsequent cases state that liability exists only where "the officer's failure to disclose the exculpatory information deprived the § 1983 plaintiffs of their right to a fair trial." *Jean v. Collins*, 221 F.3d 656, 659 (4th Cir. 2000) (en banc); see also *Hughes v. City of Chicago*, 673 F. Supp. 2d 641, 648 (N.D. Ill. 2009). Plaintiff has failed to identify a single instance in which the Seventh Circuit has allowed such suits "when the individual is merely charged with a crime, but never fully prosecuted." *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011); see also *Garcia v. City of Chicago*, 24 F.3d 966, 971-71 (7th Cir. 1994) (holding that there is no basis for a Brady claim where the charges against an individual were *nolle prossed*); *Pope v. City of Chicago*, 2009 WL 811625, at *3 (N.D. Ill. Mar. 24, 2009) ("The rule against bringing malicious prosecution claims * * * cannot be avoided by mischaracterizing malicious prosecution claims based on providing false information * * * as *Brady* violations for failing to disclose that the information is false."). Here, Plaintiff's claims do not implicate a deprivation of a trial right, but rather fall squarely within the Seventh Circuit's characterization

---

[8] The Seventh Circuit has observed that the authority of *Jones v. City of Chicago* and other cases that have treated malicious prosecution by state officers as a federal constitutional tort has been undermined in this circuit by *Newsome*. See *Gauger v. Hendle*, 349 F.3d 354, 359 (7th Cir. 2003) (overruled on other grounds by *Wallace v. City of Chicago*, 440 F.3d 421, 423 (7th Cir. 2006)).

of malicious prosecution. See *McCann*, 337 F.3d at 786; see also *Hughes*, 673 F. Supp. 2d at 648. Thus, the Court grants summary judgment to Defendants on Count V.

B.  **Plaintiff's State Law Claims**

Because the Court grants summary judgment to Defendants as to all claims (Counts I, III, and V) over which it has original jurisdiction, it must now address whether to retain jurisdiction over those state law claims. See 28 U.S.C. § 1367(c)(3). In addition to federal claims for false arrest, false imprisonment, and malicious prosecution (Counts I, III, and V), Plaintiff has asserted state law claims for false arrest (Count II), false imprisonment (Count IV), malicious prosecution (VI), and indemnity (VII). The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993). Finding no justification for departing from that "usual practice" in this case,[9] the Court dismisses without prejudice Plaintiff's state law claims for false arrest (Count II), false imprisonment (Count IV), malicious prosecution (VI), and indemnity (VII).

---

[9] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will point to a federal decision of the state-law claims on the merits." The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Id.* at 1251. That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to re-file those claims in state court. See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint. *Wright*, 29 F.3d at 1251.

## III. Conclusion

For these reasons, the Court grants Defendants' motion for summary judgment [32] on Counts I, III, and V. The Court dismisses without prejudice Plaintiff's state law claims for false arrest (Count II), false imprisonment (Count IV), malicious prosecution (VI), and indemnity (VII). The Court grants Plaintiff's motion for leave to file surreply [46], finding that it helped to clarify the issues before the Court.

Dated: March 25, 2011

Robert M. Dow, Jr.
United States District Judge